UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| OKLAHOMA STATE<br>DEPARTMENT OF EDUCATION,<br>a political subdivision of<br>THE STATE OF OKLAHOMA<br>    Plaintiff,<br><br>vs.<br><br>THE UNITED STATES OF AMERICA,<br><br>MIGUEL CARDONA,<br>in his official capacity as<br>the Secretary of Education,<br><br>UNITED STATES<br>DEPARTMENT OF EDUCATION,<br><br>CATHERINE LHAMON,<br>in her official capacity as<br>Assistant Secretary for Civil Rights,<br>Department of Education,<br><br>RANDOLPH WILLS,<br>in his official capacity as<br>Deputy Assistant Secretary<br>for Enforcement,<br>Department of Education,<br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Cause No.:  CIV-24-459-JD |

<u>OKLAHOMA STATE DEPARTMENT OF EDUCATION - ORIGINAL COMPLAINT</u>

I.     <u>BACKGROUND</u>

1.     President Joe Biden, on January 20th, 2021, issued Executive Order 13988, which is titled

"Executive Order on Preventing and Combating Discrimination on the Basis of Gender

Identity or Sexual Orientation." ("Executive Order").

2.     Pursuant to Executive Order 13988, the U.S. Department of Education ("Department")

engaged in notice-and-comment rulemaking.  On June 22nd, 2021, the Department issued

a "Notice of Interpretation" ("Notice").  The Department's Notice indicated that in the enforcement of Title IX's prohibitions on sex discrimination the Department will interpret the term "sex" to include sexual orientation and gender identity.

3.      Subsequent to the issuance of the Notice, the Department formally amended the Code of Federal Regulations ("CFR").  Specifically, on July 12th, 2022, the Department published in the Federal Register a notice of proposed rulemaking to amend the 2020 Regulations. See Notice of Proposed Rulemaking, Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance, 87 Fed. Reg. 41,390 (July 12, 2022).

4.      Comments were received from various Staes and interested parties before the expiration of the sixty (60) day comment period.   Some of the problems, or potential problems highlighted were the burdens the proposed regulations would impose on the States and its political subdivisions and schools and risk of degradation of constitutional rights that the regulations posed.   As an example, the obligations of recipients to respond to sex discrimination are expanded; yet, the threshold of conduct falling within the newly redefined term of "sexual discrimination" was lowered.  The clear, undeniable result is that recipients must be impossibly vigilant in policing interactions among students, parents, and faculty or risk noncompliance with Title IX.

5.      This Final Rule requires States, and other regulated parties such as the Oklahoma State Department of Education ("OSDE"), to ignore biological sex or face enforcement actions and the loss of federal, education funding.

6.      The Final Rule is a significant departure from the Departments' past policies.  Despite this departure the Department did not adequately explain the Final Rule in terms of the text, structure, or purpose of Title IX, rendering the Final Rule ambiguous.

7.      The Final Rule is all-encompassing and preempts all "State or local laws or other requirements" that conflict with its terms, 89 Fed. Reg. at 33,885, and it applies to any school "program or activity" regardless of whether the activity occurs within the school — or even within the United States. 89 Fed. Reg. at 33,886 (to be codified at 34 C.F.R. § 106.11).

8.      The Department, in its interpretation and actions, has relied on the decision in <u>Bostock v. Clayton County</u>, 590 U.S. 644 (2020) issued by the Supreme Court of the United States ("SCOTUS").  The Department's reliance is misplaced.

9.      <u>Bostock</u> does not require the interpretations promulgated by the Department.  In <u>Bostock</u>, SCOTUS held, in relevant part, that terminating an employee "simply for being homosexual or transgender" constitutes discrimination "because of … sex" under Title VII. <u>Id</u>. at 649–51, 655 (quoting 42 U.S.C. § 2000e-2(a)(1)).

10.     SCOTUS "assum[ed]" that the term "sex" means "biological distinctions between male and female," <u>Id</u>. at 655, and limited its decision and was unambiguous that its decision did not "sweep beyond Title VII to other federal or state laws that prohibit sex discrimination" or address other issues not before the Court such as "sex segregated bathrooms, locker rooms, and dress codes." <u>Id</u>. at 681.

11.     The Final Rule rescinds, in whole or in part, constitutional safeguards protected by the Trump Administration.  Such constitutional safeguards include, without limitation, (a) assurances that students accused of harassment have access to a fair hearing, and (b)

redefines harassment to include constitutionally protected, or previously constitutionally protected, conduct.

12. Oklahoma schools offer extracurricular activities to its students which include interscholastic athletics. Many of the athletic teams are sex-specific (e.g. separate teams for boys' and girls' sports such as basketball, cross country, powerlifting, soccer, swimming, track, et cetera).

13. The practice of Oklahoma schools is that all students, including those who identify as a gender different from his, or her, biological sex, participate in activities based upon the actual, biological sex of the individual.

14. The practice of Oklahoma schools is that both students and staff utilize private facilities (e.g. restrooms, locker rooms, or changing rooms) based on biological sex. Stated more specifically, private facilities designated for "men" or "boys" may be used by biological males only and private facilities designated for "women" or "girls" may be used by biological females.

15. The OSDE does not have, and does not intend to adopt, a policy mandating that staff or students utilize pronouns that reflect a student's personally perceived gender identity rather than his, or her, actual, biological sex.

16. Oklahoma schools are placed in a dilemma of bad options. Adhere to the Constitution and risk the loss of federal, school funding. In the alternative, both students and faculty risk damage to their respective futures for refusal to comply.

17. The Final Rule violates the Administrative Procedure Act (APA). 5 U.S.C. § 706. Specifically, the Final Rule is substantively unlawful because its purported "interpretations" of Title IX squarely conflict with the text of that statute. Title IX, by its

plain meaning wording, defines the term "sex" as "one sex" that is male or female.  20 U.S.C. § 1681(a)(5) (describing those institutions which have a policy of admitting "only students of one sex").

18.     The Department of Education engaged in arbitrary-and-capricious decision making in its promulgation of the subject regulations because it failed to define the amorphous concepts of "gender identity" and "sexual orientation."  The Department also failed to adequately and properly consider all relevant factors (e.g. the interplay between Title IX and other federal and state laws).  The Department also failed, or refused, to provide any significant explanation of its sudden reversal of its own prior policies.

19.     It has yet to be determined whether Title IX applies to discrimination based on sexual orientation or gender identity.  See Bostock at wherein SCOTUS specifically held "we have not had the benefit of adversarial testing about the meaning of their terms, and we do not prejudge any such question today."

20.     Assuming arguendo, without conceding, that the concepts sexual orientation and gender identity were protected against discrimination by Title IX.  Regardless, the Final Rule's provisions fail to faithfully implement such protections because the Rule makes unlawful school policies that do not discriminate based on those concepts.  To the contrary, the clear effect of the Rule is discrimination based on sexual orientation and gender identity.  The effect is accomplished by allowing single-sex programs and facilities, but simultaneously requiring opposite-sex access to those same programs and facilities, but only for those individuals who claim a transgender gender identity.

21. Title IX states, "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

22. Title IX was enacted by Congress to promote equal opportunity for women and prohibits educational institutions from discriminating on the basis of sex; however, title IX allows the same educational institutions to maintain separation of the sexes/genders in some programs. Such separation is permissible in order to equalize opportunity for female students and to protect the privacy rights of all students.

23. Since the enactment of Title IX, the Department understood and interpreted the prohibition on sex discrimination to refer to the biological sex of an individual. In turn, all recipients understood and applied the prohibition according to the Departments' interpretation.

24. The Final Rule redefines the term "sex" to mean or include disparate terms i.e. "gender identity," "sex characteristics," and "sex stereotypes," inter alia.

25. The Final Rule now redefines Title IX's prohibition on sex discrimination to include "discrimination on the basis of sex stereotypes, sex characteristics, pregnancy or related conditions, sexual orientation, and gender identity." 89 Fed. Reg. 33,886 (to be codified at 34 C.F.R. § 106.10).

26. The redefinition of "sex" under the Final Rule makes it clear, and unavoidable, that schools must now ignore the traditional, accepted, previously and relied upon, definition of "sex" in order to promote a person's subjective sense of his, or her, gender.

27. The traditional definition of "sex" must be ignored even in circumstances wherein female students are deprived of the equal opportunities in education that Title IX provided upon its enactment.

28.   Pursuant to the Final Rule, federal funding may be withheld from schools that do not allow students access to "restrooms and locker rooms" and comply with any "appearance codes (including dress and grooming codes)" based on gender identity.  See, e.g., 89 Fed. Reg. at 33,816.  In real terms, a violation now occurs under Title IX when a transgender student is denied access to a bathroom or locker room of the opposite biological sex. See, e.g., 89 Fed. Reg. at 33,818.  Such access clearly violates the rights of other non-transgender students and violates established law, to wit: "The Department cannot enforce Title IX in a manner that requires recipients to restrict any rights protected under the First Amendment."  85. Fed. Reg. 30,071.

29.   The Final Rule further commands a lower standard for sexual harassment.  Specifically, the Final Rule dictates that "[s]ex-based harassment, including harassment predicated on sex stereotyping or gender identity, is covered by Title IX if it is sex-based, unwelcome, subjectively and objectively offensive, and sufficiently severe or pervasive to limit or deny a student's ability to participate in or benefit from a recipient's education program or activity."  89 Fed. Reg. at 33,516

30.   The new, lower standard and definition of sexual harassment expands the prohibition previously found under Title IX and is contrary to established, legal precedent from the Supreme Court of the United States ("SCOTUS").  See Davis v. Monroe Cnty. Bd. of Educ., 526 U.S. 629, 649–50 (1999), which defined as conduct "that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school." 526 U.S. at 650.

31.    Another obvious result of the Final Rule and its enforcement is that students, faculty, and staff are subject onerous, unjustified investigations if they fail to use a transgender student's preferred pronouns.

32.    Prior 2020 Regulations purposefully adopted the standard of sexual harassment set forth in Davis "to ensure that speech and expression are prohibited only when their seriousness and impact avoid First Amendment concerns." 85. Fed. Reg. 30142.

33.    No justification may be found, or has been sufficiently articulated by, the Department in the departure from the Davis standard.  Perhaps more important, the Department has failed or declined to explain how the lowered standard conforms to the Constitutional mandates. These facts are highlighted by the verbiage that the Department "believe[s] a broader standard is appropriate."  89 Fed. Reg. at 33,498.  Remarkably, no basis, cogent or otherwise, is provided for the asserted belief.

34.    The Final Rule lacks objective standards, which in turn, renders every complaint subjective.  As an example, interpretation and enforcement of the Final Rule is subject to transient identification (i.e. those individuals that may not permanently identify as transgender).  See Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 451 (5th Ed. 2013) (defining "transgender" to include "individuals who transiently" identify one way).  This places recipients in an untenable, if not impossible, position … how to determine the true intentions or true identifications of an individual and how to respond to a given set of circumstances.  It also places recipients and other students at unnecessary risk when faced with instances in which the true intent is to merely gain access to a female bathroom, locker room or other facility for predatory purposes.

8

35. Easily foreseeable examples make it clear that the Final Rule is fatally defective on the grounds that it is vague, ambiguous, and over broad.

36. The Final Rule is also fatally defective on the grounds that it fails to adequately notify recipients of the conduct that constitutes compliance sufficient to investigations withholding of funding.

37. Pursuant to 5 U.S.C. § 705, this Court should postpone the effective date of the Final Rule and preliminarily enjoin the implementation of the interpretation to cover discrimination on the basis of sexual orientation or gender identity.

38. Pursuant to 5 U.S.C. § 706(2)(A), this Court vacate and set aside the Final Rule and permanently enjoin the Defendants the implementation, enforcement and interpretation of Title IX as proposed by the Defendants.

II.    PARTIES

39. The Plaintiff incorporates fully by reference ¶¶ 1 through 38 set forth supra.

40. The Plaintiff, the Oklahoma State Department of Education ("OSDE"), is a political subdivision of the State of Oklahoma.  More specifically, the OSDE is the state education agency of the sovereign State of Oklahoma.  OSDE is charged with determining the policies of, and directing the administration and supervision of, the Oklahoma public school system and ensuring compliance with Title IX.  The OSDE is bound by the Oklahoma Constitution, Oklahoma laws, and applicable federal laws, including without limitation, Title IX.  The State of Oklahoma is a sovereign State of the United States.

41. The OSDE receives federal funding administered by the United States Department of Education, including funding under the Individuals with Disabilities Education Act and Title I of the Elementary and Secondary Education Act.

42.  The United States of America ("United States") is the federal sovereign and is being sued pursuant to 5 U.S.C §§ 702–03 and is also sued pursuant to 28 U.S.C. § 1346. 9.

43.  Miguel Cardona is the Secretary of the Department of Education and is sued in his official capacity.

44.  The Department of Education ("Department") is an executive branch department of the United States.  The Department is responsible for administering most federal assistance for education to the States.  The Department also administers and enforces Title IX.

45.  Catherine Lhamon is the Assistant Secretary for Civil Rights at the Department of Education and is sued in her official capacity.

46.  Randolph Wills is the Deputy Assistant Secretary for Enforcement at the Department of Education and is sued in his official capacity.

47.  All Defendants, other than the United States, are agencies of the United States or officers and employees of the United States and were, at all times material hereto, acting in their respective official capacities or under the color of law.

### III.  JURISDICTION AND VENUE

48.  The Plaintiff incorporates fully by reference ¶¶ 1 through 47 set forth supra.

49.  This Court has federal-question jurisdiction pursuant to 28 U.S.C. § 1331 on the grounds that this lawsuit involves the breadth and scope of the Department's authority under Title IX.  This lawsuit also arises under the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 702–703.

50.  This Court has equitable jurisdiction over the issues presented.  See Larson v. Domestic & Foreign Com. Corp., 337 U.S. 682, 689–91 (1949).

51. This Court also possesses the remedial power to review, and to enjoin, ultra vires or unconstitutional agency action as complained of and set forth at length herein.  Id.

52. Venue is proper before this Court pursuant to 28 U.S.C. § 1391(e)(1) on the grounds that the agencies of the United States and officers of the United States in their official capacities.

53. The OSDE "resides" and/or is constituted in this district.  Moreover, a substantial part of the acts, omissions or conduct which gives rise to the claims levied herein arose in this district.

54. The Plaintiff asserts its right to, and respectfully demands, a trial by jury on all issues pursuant to the Seventh Amendment to the United States Constitution and Federal Rule of Civil Procedure 38.

IV.   <u>CLAIMS</u>

<u>COUNT I</u>      <u>THE FINAL RULE EXCEEDS STATUTORY AUTHORITYAND VIOLATES THE LAW 5 U.S.C. § 706 110.</u>

55. The Plaintiff incorporates fully by reference ¶¶ 1 through 54 set forth supra.

56. Under the APA, a court must "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "in excess of statutory … authority, or limitations, or short of statutory right." See 5 U.S.C. § 706(2)(A), (C).

57. The Final Rule violates § 706(2)(A), (C) and exceeds the Department's statutory authority on the grounds that the Department, in its interpretation of Title VII has erroneously relied upon, and improperly extended, the SCOTUS decision on <u>Bostock</u> as stated above.  The Department's interpretation ignores significant textual and structural differences between Title VII and Title IX … as well as the disparate subject matter covered by the respective

11

statutes … as well as the express disclaimer and limitation noted in <u>Bostock</u> i.e. that the holding did not apply to other federal or state laws.

58.   The Final Rule violates the law and exceeds the Department's statutory authority.  Title, IX, in plain, unambiguous wording, allows recipients of federal education funding, such as the OSDE, to distinguish between biological males and biological females in situations the Final Rule condemns.

59.   The correct interpretation of Title IX's prohibition on discrimination "on the basis of sex" does not include protections based upon concepts of sexual orientation or gender identity.

60.   The Final Rule violates the law and exceeds the Department's statutory authority on the grounds that it compels recipients of federal school funding to violate the First Amendment in order to remain compliant with Title IX.  More particularly, the Final Rule abandons the previous definition of sexual harassment articulated in <u>Davis v. Monroe Cnty. Bd. of Educ.</u>, 526 U.S. 629, 649–50 (1999), which was adopted by the Department via its 2020 rulemaking.   The Final Rule now embraces a significantly weaker standard that encompasses constitutionally protected activity.

61.   By reinterpreting the word "sex" to include sexual orientation and gender identity the Department has impermissibly expanded the liability, or potential liability, of recipients of federal, school funding beyond what the liability traditionally permitted under Title IX.  As an example, the Final Rule fundamentally rewrites Title IX's prohibition on sex-based discrimination.  Now, the failure to affirm a student's gender identity would constitute "sex-based harassment." See, e.g., 89 Fed. Reg. at 33,884. 116. Recipients have an obligation under the Final Rule to "take specific actions … to promptly and effectively prevent sex discrimination," including what the Final Rule now redefines as sex-based

harassment. 89 Fed. Reg. at 33,887.  An obvious consequence is that recipients would have an obligation under the Final Rule to confront, and possibly discipline, students and employees who refuse to affirm another's gender identity.  Failure to do so risks noncompliance with Title IX as now interpreted.

62.    Defendants violate the law as cited above and exceed their statutory and regulatory authority not only in the promulgation of the Final Rule, but in the enforcement of the same.

COUNT II    <u>PROMULGATION AND ENFORCEMENT OF THE FINAL RULE CONSTITUTES ARBITRARY AND CAPRICIOUS AGENCY ACTION IN VIOLATION OF 5 U.S.C. § 706 118.</u>

63.    The Plaintiff incorporates fully by reference ¶¶ 1 through 62 set forth supra.

64.    The Final Rule is a final agency action, as defined by statute infra, and is subject to review under the APA.

65.    "[A]gency action" is "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."  5 U.S.C. § 551(13).

66.    An agency rule is defined as "the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency." Id. at § 551(4).

67.    The Final Rule is arbitrary and capricious under well-established case law as set forth below.

68.    "[A], an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the

evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins. Co., 463 U.S. 29, 43 (1983).

69.   An agency action is arbitrary or capricious if it fails to "articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." Id.

70.   Under the APA, a court must "hold unlawful and set aside agency action" that is "arbitrary and capricious."  5 U.S.C. § 706(2)(A).

71.   Here, the Defendants acted arbitrarily and capriciously in issuing the Final Rule. Specifically, and without limitation, the Defendants: (a) failed or refused to engage in reasoned decision making, (b) relied on factors Congress did not intend to be considered, (c) entirely failed to consider an important aspect of the problem, and (d) offered no explanation, or no plausible explanation, for the decision.

72.   Defendants willfully ignored the limitation set forth in Bostock itself (i.e. limited to the issue presented under Title VI) as well as case law that recognized that "Bostock … was limited only to Title VII itself" and "does not stretch to [other statutes]."  See e.g. Pelcha v. MW Bancorp, Inc., 988 F.3d 318, 324 (6th Cir. 2021); See also, Neese v. Becerra, 640 F. Supp. 3d 668 (N.D. Tex. 2022) (Kacsmaryk, J.); compare 89 Fed. Reg. at 33,806.

73.   The Final Rule also fails to adequately consider the effects of its terms on the States and affected political subdivisions of the States such as the OSDE.  See generally 89 Fed. Reg. 33,474–33,896.

74.   The Defendants were obliged to "adequately assess reliance interests" or "reasonably consider […] the relevant issues and reasonably explain […] the decision."  See <u>Texas v. Biden</u>, 10 F.4th 538, 552, 555 (5th Cir. 2021).

75.   Despite their legal obligation(s), the Defendant's expressly "decline[d] to opine on how [the Final Rule] interacts or conflicts with any specific State laws because it would require a fact-specific analysis."  89 Fed. Reg. 33,822.  Rather, the Defendant's merely "refer[red] the public to § 106.6(b), which affirms that a [school's] obligation to comply with Title IX and the regulations is not obviated or alleviated by any State or local law."  89 Fed. Reg. 33,822.

76.   Finally, the Final Rule fails to properly articulate the basis for its departure from established SCOTUS precedent related to sex-based harassment definition and policies previously adopted by the Department itself, as well as prior Department rulemaking.

## V.   DEMAND FOR RELIEF

77.   The Plaintiff incorporates full by reference ¶¶ 1 through 76 set forth supra.

78.   This Court is authorized to award the requested vacatur and declaratory and injunctive relief.  See APA, 5 U.S.C. §§ 702, 705, and 706.  See also 28 U.S.C. § 1361, commonly referenced as the Declaratory Judgment Act; 28 U.S.C. §§ 2201–2202 (Federal Rules of Civil Procedure 57 and 65) and the general and legal equitable powers of the Court.

79.   The OSDE respectfully requests that the following relief from this Court:

   a.   Pursuant to 5 U.S.C. § 705, postponement of the effective date of the Final Rule.

   b.   Pursuant to 5 U.S.C. § 706(2), a finding and holding that the Final Rule is unlawful and that the same be set aside, vacated and held for naught.

c.   A Declaratory Judgment holding that the Final Rule is contrary to Title IX and exceeds agency authority.

d.   A Declaratory Judgment holding that the Final Rule is arbitrary and capricious, both in its wording and enforcement as well as in the process which brought the Final Rule into being.

e.   That the Plaintiff be awarded preliminary (temporary) and permanent injunctive relief prohibiting the Defendants from interpreting and/or enforcing Title IX as barring discrimination based on sexual orientation or gender identity.  The instant request for relief includes, without limitation, the denial of federal financial assistance or the pursuit, charging, or assessing any penalties, fines, assessments, investigations, or other enforcement actions.  The instant request for relief also includes, without limitation, the enforcement, implementation or other reliance on the Final Rule, in any form, against the OSDE or any Oklahoma school.

f.   An award of such other relief as the Court may deem warranted and proper, whether in equity or in law.

Dated May 6th, 2024.                            Respectfully submitted,


                                                _s/ Michael T. Beason_____
                                                Michael T. Beason
                                                OBA No. 18535
                                                General Counsel
                                                Oklahoma State Department of Education
                                                Oliver Hodge Building
                                                2500 N. Lincoln Blvd.
                                                Oklahoma City, Oklahoma 73105
                                                michael.beason@sde.ok.gov